## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| WALTER WARD III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-CV-329 |
| | ) | |
| FORT WAYNE POLICE | ) | |
| DEPARTMENT OFFICERS DAVID | ) | |
| TINSLEY and JASON FUHRMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

This matter is now before the Court[1] on the Plaintiff's motion *in limine* and supplemental motion *in limine* filed on November 30, 2011.[2] (Docket # 43, 47.) Defendants responded on December 8, 2011 (Docket # 81); Plaintiff did not file a reply, and the time to do so has since passed. As such, the motion is now ripe for ruling. For the reasons provided below, the Plaintiff's motion *in limine* and supplemental motion *in limine* will be GRANTED IN PART and DENIED IN PART.

---

[1]Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (*See* Docket # 12.)

[2]The Court's deadline for the filing of motions *in limine* was November 23, 2011. (Defs.' Mot. to Strike Pl.'s Mot. in Limine ¶ 2.) Due to inadvertently flipping the deadlines for this case and a state court case (Pl.'s Mot. to File Belated Mots. in Limine ¶ 1), Plaintiff's counsel did not file the motion *in limine* or supplemental motion *in limine* until a week passed the deadline (Docket # 43, 47). Plaintiff then moved to file belated motions *in limine*. (Docket # 48.) Defendants objected to the late filing and moved to strike both of Plaintiff's motions. (Docket #45, 50.) At the hearing on December 5, 2011, the Court granted the Plaintiff's Motion to File Belated Motions *in Limine*, thereby denying the Defendants' motions to strike and overruling their objections. (Docket # 59.)

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Walter Ward III is suing the Defendants, Fort Wayne Police Department (FWPD) Officers David Tinsley and Jason Fuhrman, under 42 U.S.C. § 1983.  Ward's claim arises out of the events that occurred on October 9, 2008, when Officers Tinsley and Fuhrman were dispatched to Ward's home on a domestic disturbance call and subsequently arrested him. (Compl. ¶¶ 3, 5.)  Ward contends that Officers Tinsley and Fuhrman violated his Fourth Amendment rights by using excessive force against him during the course of his arrest on October 9, 2008.

## III.  NATURE OF AN ORDER *IN LIMINE*

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question."  *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part) (citation omitted).  "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials."  *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change."  *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").  In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer."  *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in*

2

*limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect," *id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## IV.  UNOPPOSED PORTIONS OF PLAINTIFF'S MOTIONS *IN LIMINE* (NOS. 4, 7-10)

Defendants do not object to Ward's effort to preclude references or allusions to FWPD protocol or standard operation procedures; attorney's fees; settlement negotiations; tax considerations; and any "send a message" arguments in opening or closing statements.  As such, the Plaintiff's motion is GRANTED as to these matters.

## V. OPPOSED PORTIONS OF PLAINTIFF'S MOTIONS *IN LIMINE* (NOS. 1-3, 5-6, 11-13)

Defendants object to eight of thirteen items catalogued in Ward's motion in *limine* and supplemental motion *in limine*.  The Court will address each of these contested items in turn.

### A.  Narrative Reports (No. 1)

Ward seeks to exclude any narrative reports by Officers Tinsley and Fuhrman or any other officers who may testify, arguing that they are biased, prejudicial, and constitute inadmissible hearsay.  (Pl.'s Mot. in Limine 1-2.)  Defendants counter that the narrative reports are admissible under Federal Rule of Evidence 803(8) as public records and reports and that some of the witness statements contained in these reports may fall under Rule 803(2), the excited utterance exception to the hearsay rule.  (Defs.' Resp. 2-3.)  Defendants further argue that the narrative reports may be used to refresh an officer's recollection under Rule 803(5) and that police reports are not "inherently unreliable and inadmissible" as Ward alleges.  (Defs.' Resp. 3-

3

4.)

At this juncture, Ward's motion *in limine* is GRANTED with respect to this evidence. Presumably, any narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover, until Defendants have laid a proper foundation, they may not use the document to refresh their recollection or read the document into evidence under Rule 803(5).

### B. The Criminal Charges Brought Against Ward (No. 2)

Next, Ward seeks to preclude evidence about whether criminal charges were brought against him as a result of his arrest on October 9, 2008, on the basis that, because this is an excessive force case, the jury does not need to hear that Defendants arrested or charged Ward with particular criminal offenses. (Pl.'s Mot. in Limine 2.) Ward further argues that, since the charges brought against him involved domestic violence, allowing the jury to hear what the charges were would be unduly prejudicial. (Pl.'s Mot. in Limine 2.) In response, Defendants maintain that the jury is entitled to know the nature of the offenses for which Ward was arrested because the charges are relevant to the jury's assessment of the reasonableness of the officers' conduct. (Defs.' Resp. 6.)

The Court agrees with Ward that neither the charges brought against him, nor their ultimate resolution, should be admitted. Ward is not making a false arrest or malicious prosecution claim. The only issue in dispute is whether, in light of the facts and circumstances

4

known to them at the time, Officer Tinsley's and Officer Fuhrman's use of force against Ward was objectively reasonable.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007).  Whether or not Ward was later charged with a crime is irrelevant to whether the amount of force Officers Tinsley and Fuhrman used in arresting him was excessive.  Furthermore, significant prejudice or confusion could arise if the jury seeks to retroactively gauge the reasonableness of Officer Tinsley's and Officer Fuhrman's use of force against the knowledge that criminal charges were later lodged by the prosecuting attorney.  *See* Fed. R. Evid. 403.

Nonetheless, Officers Tinsley and Fuhrman will be permitted to testify about why they arrested Ward, as that would be relevant to the reasonableness of the force used.  Fed. R. Evid. 402; *Payton v. Fike*, No. 1:09-cv-222, 2010 WL 4065601, at *3 (N.D. Ind. Oct. 15, 2010); *Larsen v. Barrientes*, No. 1:09-cv-55, 2010 WL 2772325, at *2 (N.D. Ind. July 12, 2010); *Starks-Harris v. Taylor*, No. 1:08-cv-176, 2009 WL 2970382, at *3 (N.D. Ind. Sept. 11, 2009).  While Ward argues that allowing the jury to hear that he was arrested for domestic violence would be unduly prejudicial, "[t]o the extent that the officers were told that there was a 'domestic disturbance in progress' . . . such information is highly probative at least as to their states of mind . . . ."  *Ellis v. Country Club Hills*, No. 06 C 1895, 2011 WL 6001148, at *5 (N.D. Ill. Dec. 1, 2011).  Importantly, "[p]olice officers arrive at the scene of a reported 'domestic disturbance' with a different mindset than officers who are responding to a call about a cat stuck in a tree, and the jury is entitled to understand the circumstances that were known to the officers at the relevant time periods."  *Id.*  Any prejudice from allowing the jury to hear that Defendants were called to the scene because of a domestic disturbance fails to substantially outweigh the

probative value of that evidence to the jury's determination of whether the force Defendants used was reasonable.  *See* Fed. R. Evid. 403.  Accordingly, Ward's Motion is GRANTED IN PART and DENIED IN PART with respect to this evidence.

### C. Ward's Criminal Record (No. 3)

Ward also attempts to preclude evidence regarding Ward's criminal record or information as to other alleged prior bad acts, arguing that they are inadmissible character evidence under Federal Rule of Evidence 404(b).  (Pl.'s Mot. in Limine 2.)  In response, Defendants argue that this evidence is admissible under Rule 404(b) to show Ward's motive to resist and flee the police on October 9, 2008, especially because Ward was on probation at that time, and for purposes of impeachment under Federal Rule of Evidence 609.  (Defs.' Resp. 7-14.)

First, Defendants' argument that Ward's prior convictions, including his convictions stemming from his arrest on October 9, 2008, and other "bad acts" are admissible under Federal Rule of Evidence 404(b) to show Ward's motive for resisting arrest or fleeing the police is unpersuasive, as Ward's motive is not an issue in this case.  *Jackson v. Allen*, No. 1:09-cv-117, 2011 WL 1565859, at *6 (N.D. Ind. Apr. 25, 2011).  The slight probative value, if any, of Ward's potential motive to resist or flee the officers is substantially outweighed by the risk of undue prejudice and confusion if these issues were paraded before the jury.  Fed. R. Evid. 403; *Jackson*, 2011 WL 1565859, at *6.

On the other hand, Ward's convictions may be admissible under Federal Rule of Evidence 609 for the purpose of attacking Ward's truthfulness.  Although Ward does not specify the potentially impeaching convictions, the Defendants do.  (*See* Defs.' Resp. 5, 9-10.)  On September 22, 1997, Ward was convicted on two charges of dealing in cocaine or narcotics,

6

Class B felonies, and received a six-year sentence; he was released from incarceration for this conviction on August 18, 2002. (Defs.' Resp. 9.) On September 5, 2008, Ward was convicted of domestic battery and invasion of privacy, both Class D felonies, was sentenced to the Indiana Department of Corrections for one and one-half years, and was placed on probation. (Defs.' Resp. 10.) As a result of his arrest on October 9, 2008, Ward pled guilty and was convicted of two felony counts of domestic battery, a Class D felony, and resisting law enforcement by fleeing, a Class A misdemeanor. (Defs.' Resp. 5.) Subsequent to this October 9, 2008, arrest, on July 27, 2011, Ward pled guilty and was convicted of possession of cocaine, a Class D felony, for which he was sentenced to three years. (Defs.' Resp. 10.)

Rule 609(a)(1) provides that evidence of a witness's criminal conviction is admissible, subject to Rule 403, "if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . ." Convictions are not admissible, however, "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The Seventh Circuit has "defined both the starting and ending points for the calculation of Rule 609(b)'s ten-year time limit. The clock starts at the witness's release from any physical confinement, or in the absence of confinement, the date of the conviction." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) (citation omitted). "[T]he end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying." *Id.* (citation omitted). Therefore, all four of Ward's felony

convictions—the 1997 conviction, for which he was released from incarceration on August 18, 2002, less than ten years ago; the 2008 conviction for domestic battery and invasion of privacy; the conviction for domestic battery stemming from his October 9, 2008, arrest; and the 2011 conviction for possession of cocaine—fall within the ten year period before the start of the trial on December 13, 2011.  As such, they are admissible for the limited purpose of impeachment.[3]

Nevertheless, while Defendants may use Ward's felony conviction for domestic battery arising from his arrest on October 9, 2008, for impeachment purposes under Federal Rule of Evidence 609, they may not inform the jury that this conviction was a result of the arrest in question.  Furthermore, because Ward's conviction for resisting law enforcement by fleeing was a misdemeanor, Defendants may not introduce evidence of this conviction unless Ward denies it, in which case he may be impeached with his plea of guilty to this charge.

Therefore, at this stage, Ward's motion *in limine* is DENIED as to Ward's felony convictions—the 1997 conviction for dealing in cocaine or narcotics, the 2008 convictions for domestic battery and invasion of privacy, the conviction for domestic battery stemming from his October 9, 2008, arrest, and the 2011 conviction for possession of cocaine—in that these convictions are admissible for the limited purpose of impeachment.  Ward's motion *in limine* is GRANTED as to Ward's misdemeanor conviction for resisting law enforcement arising from the October 9, 2008, arrest, unless Ward denies it, in which case the conviction may be used for

---

[3]Ward makes no argument as to why the probative value of these convictions for purposes of impeachment is outweighed by any prejudicial effect, *see* Fed. R. Evid. 609(a), 403, and the Court can see none.  After all, Ward's credibility is central to the case.  *Pinkney v. Thomas*, No. 1:07-cv-186, 2008 WL 4514830, at *2 n.4 (N.D. Ind. Oct. 7, 2008); *see United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997).  However, to minimize the risk of undue prejudice, Defendants are limited to submitting into evidence solely the date, charge, and disposition of the convictions.  *Pinkney*, 2008 WL 4514830, at *2 n.4; *see, e.g.*, *Charles v. Cotter*, 867 F. Supp. 648, 656 (N.D. Ill. 1994) (concluding that the witness's felony convictions were probative evidence of his credibility and that any prejudicial effect was reduced by limiting the cross-examination "to the crime charged, the date, and the disposition (*i.e.*, guilty or not guilty—not length of sentence) with respect to felony convictions during the past ten years").

impeachment purposes.

### D.  Any Allegations that Ward Was Involved in Prior Physical Altercations (No. 5)

Ward further seeks to prevent Defendants from introducing allegations of prior bad acts—namely physical altercations or fights—on the grounds that this would constitute impermissible character evidence under Federal Rule of Evidence 404(b) and would be highly prejudicial and inflammatory.  (Pl.'s Mot. in Limine 3.)  Defendants respond that such evidence is admissible under Rule 404(b) to show Ward's motive to resist and confront Officers Tinsley and Fuhrman and to show habit.  (Defs.' Resp. 15.)

As noted above in connection with evidence of Ward's prior convictions, Defendants' argument that Ward's prior physical altercations are admissible under Federal Rule of Evidence 404(b) to show Ward's motive for resisting arrest and confronting the officers and to show habit is unpersuasive, as Ward's motive is not an issue in this case.  *Jackson*, 2011 WL 1565859, at *6. The slight probative value, if any, of Ward's potential motive to resist or habit of fighting is substantially outweighed by the risk of undue prejudice and confusion if these issues were paraded before the jury.  Fed. R. Evid. 403; *Jackson*, 2011 WL 1565859, at *6.  Therefore, Ward's motion *in limine* is GRANTED as to this evidence, except for the prior convictions addressed above.

### E.  Photos of April Erxleben (No. 6)

Ward anticipates that Defendants will seek to introduce photographs of April Erxleben, Ward's former girlfriend, which were taken of her shortly after Defendants arrested Ward on October 9, 2008.  Ward argues that these pictures should be excluded as they will inflame the jury and be unfairly prejudicial to him.  (Pl.'s Mot. in Limine 3.)  According to Defendants, these

9

photographs are relevant to the officers' knowledge as to Ward's violent disposition and, as such, are admissible.  (Defs.' Resp. 16.)

From the officers' narrative reports, however, it is unclear whether the officers saw Erxleben's injuries prior to Ward's arrest.  Therefore, because reasonableness, the standard under which excessive form claims are judged, is evaluated from the officer's perspective at the time of the arrest rather than with 20/20 hindsight, *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999), the photographs of Erxleben will be excluded until a foundation is laid showing that Officer Tinsley or Officer Fuhrman saw something that indicated that the altercation between Ward and Erxleben was not just a verbal fight, but a physical one as well.  Accordingly, at this stage, Ward's motion *in limine* as to the photos of April Erxleben is GRANTED.

### F.  Statements By Witnesses That Ward Beat Anyone Prior to His Arrest (No. 11)

Similar to Ward's argument seeking to exclude evidence of any prior physical altercations or fights, Ward also requests that any statements by witnesses that Ward "beat" anyone prior to his arrest or that, before the date of his arrest, he "beat" or "physically abused" anyone be excluded at trial.  (Pl.'s Mot. in Limine 4.)  Defendants direct the Court to the habit and motive argument they made in response to Ward's efforts to preclude evidence of any prior physical altercations.  (Defs.' Resp. 16.)  The Court, once again, finds this argument—that evidence that Ward physically abused anyone prior to is arrest is admissible under Rule 404(b) to show Ward's motive to resist and confront the defendant officers—unpersuasive.

Nevertheless, the Court will allow Defendants to testify at a foundational level that they had been dispatched to the same address before, as it goes to their knowledge of the individuals involved—Ward and Erxleben—and to their ability to identify any injuries to Erxleben that they

perceived upon arriving at the scene.  Accordingly, Ward's motion *in limine* will be GRANTED as to this evidence, except as to these foundational matters.

### G.  References to Ward's Alleged Intoxication (No. 12)

In his supplemental motion *in limine*, Ward first seeks to preclude any references to his alleged intoxication on October 9, 2008, as it would confuse and mislead the jury because the officers are not qualified to testify as to the alleged probable effect that any given substance had on Ward's behavior at the time of the arrest and because no breathalyzer test was performed. (Pl.'s Suppl. Mot. in Limine 1-2.)  Defendants counter that Ward's physical condition at the time of the arrest, including whether he was intoxicated or under the influence of any narcotics, is relevant to the jury's evaluation of Ward's credibility and should therefore be admissible on cross-examination for the purposes of challenging Ward's perception of the events.  (Defs.' Resp. 18-19.)

First, Ward's behavior, which includes whether he was under the influence of alcohol or another substance during the disputed events, is relevant to Officer Tinsley's and Officer Fuhrman's state of mind at the time of the arrest and the excessive force inquiry.  *More v. City of Braidwood*, No. 08 C 5203, 2010 WL 3547964, at *3 (N.D. Ill. Sept. 7, 2010).  Moreover, "[w]here there is reason to believe that alcohol or [narcotics] impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his drug or alcohol use is admissible."  *Casares v. Bernal*, 790 F. Supp. 2d 769, 785-86 (N.D. Ill. May 20, 2011) (citing *United States v. Spano*, 421 F.3d 599, 606 (7th Cir. 2005)).  If Ward was intoxicated at the time of his arrest, his ability to observe, recall, and recount the events of October 9, 2008, are called into question, making testimony about his

11

behavior on that day admissible.

Here, Defendants' testimony about their perception of Ward and his behavior before and during his arrest is relevant not only for the reasons stated above, but also because evidence that Ward was intoxicated makes it more likely that he acted in the way Defendants say he did. *Id.*; *see Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (stating that, in an excessive force case, the plaintiff's intoxication was relevant to the reasonableness of the plaintiff's conduct at that time and its probative value was not substantially outweighed by the danger of unfair prejudice as the evidence tends to make it more probable that the plaintiff acted as the defendant contended). The evidence of Ward's alleged intoxication helps to explain the facts and circumstances that Defendants confronted before, during, and after the arrest. *Casares*, 790 F. Supp. 2d at 786; *see Graham*, 490 U.S. at 397. Although evidence of Ward's intoxication could paint Ward in a bad light, "that prejudicial impact is substantially outweighed by its probative value." *Casares*, 790 F. Supp. 2d at 786; *see* Fed. R. Evid. 403. Moreover, although Ward was not given a breathalyzer test and Defendants are not medical experts, evidence of intoxication is not limited to medical measurements like blood alcohol level; "[o]ther indicators are well within the experience of the average adult." *Acevedo v. Canterbury*, No. 03 C 0073, 2004 WL 1166602, at *1 (N.D. Ill. May 24, 2004). As such, the officers are allowed to testify as to what they observed regarding Ward's behavior on October 9, 2008. Accordingly, Ward's supplemental motion *in limine* is DENIED as to Ward's alleged intoxication at the time of his arrest.

### H. Statements from Ward's Medical Record from St. Joseph Hospital (No. 13)

Lastly, in his supplemental motion *in limine*, Ward seeks to prevent Defendants from

offering into evidence the statements contained in Ward's medical record from St. Joseph

Hospital Emergency Room that Ward was "arrested for assaulting a lady in a domestic

disturbance" and that Ward was "still fighting [the officers]" so they "had to use mace to control

him." (Pl.'s Suppl. Mot. in Limine 2.) Ward argues that these statements are hearsay and

inherently unreliable and, thus, are inadmissible. (Pl.'s Suppl. Mot. in Limine 2.) Defendants

respond that any statements contained in Ward's medical records are not hearsay, and, as such,

are admissible. (Defs.' Resp. 19.) The admissibility of these statements, however, is intertwined

with whether the medical record in which they are contained—the St. Joseph Hospital

Emergency Room record—is entered into evidence. Defendants maintain that, if no medical

witness is going to testify, then the record, and the statements contained within it, are not

admissible. On the other hand, if this medical record is entered into evidence, Ward wants to

redact the statements identified above, while Defendants object to the redactions and argue that

the medical record should be entered in its original form. (Defs.' Suppl. Obj. to Pl.'s Exs. B, B

[*Sic*], and C ¶ 2.) The Court will order that the record from the St. Joseph Hospital Emergency

Room be excluded from evidence until such time as a foundation is laid. Once a foundation is

laid, the Court will consider whether redacting the exhibit, and excluding these statements, is

appropriate.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* (Docket # 43) and supplemental

motion *in limine* (Docket # 47) are GRANTED IN PART and DENIED IN PART. It is therefore

ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer

to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during

voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury.  Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

 SO ORDERED.

 Enter for the 12th day of December, 2011.


     S/Roger B. Cosbey_____
     Roger B. Cosbey,
     United States Magistrate Judge